NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4565-13T3

IN THE MATTER OF THE
IMPLEMENTATION OF L. 2012,
C. 24, <u>N.J.S.A.</u> 48:3-87(t) –
A PROCEEDING TO ESTABLISH A
PROGRAM TO PROVIDE SRECs TO
CERTIFIED BROWNFIELDS, AREAS
OF HISTORICAL FILL, AND LANDFILL
FACILITIES – MILLENIUM LAND
DEVELOPMENT, LLC (LOVE LANE)

_____

> **APPROVED FOR PUBLICATION**
>
> **November 12, 2015**
>
> **APPELLATE DIVISION**

Submitted September 22, 2015 – Decided November 12, 2015

Before Judges Reisner, Leone and Whipple.

On appeal from the New Jersey Board of Public Utilities.

Justin Michael Murphy, attorney for appellant Millenium Land Development.

John J. Hoffman, Acting Attorney General, attorney for respondent New Jersey Board of Public Utilities (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Jennifer Hsia, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

REISNER, P.J.A.D.

Millenium Land Development (Millenium) appeals from a July 19, 2013 decision of the Board of Public Utilities (Board) and from the Board's May 21, 2014 decision denying Millenium's motion for reconsideration.  In the May 21 decision, the Board

confirmed its earlier rejection of Millenium's application filed pursuant to the Solar Act, N.J.S.A. 48:3-87(t) (subsection (t)), but stated different grounds for the rejection. We agree with the Board that Millenium's application could not be considered under subsection (t), because it concerned a solar project to be sited on property which had been valued, assessed and taxed as farmland, and such applications are governed by N.J.S.A. 48:3-87(s) (subsection (s)). Moreover, there was no evidence that the land was a contaminated industrial or commercial site within the Act's definition of a brownfield. See N.J.S.A. 48:3-51. Accordingly, we affirm.

I

As further discussed in section II of this opinion, the Solar Act of 2012 (the Act), L. 2012, c. 24, amended the Electric Discount and Energy Competition Act, N.J.S.A. 48:3-49 to -98.1, in an effort to further several goals of the State's 2011 Energy Master Plan. Those policies included promoting the installation of solar projects on contaminated industrial and commercial sites that would likely otherwise remain unproductive, while "discouraging large-scale solar projects on farmland and open space." Press Release, Office of the Governor, Governor Christie Builds on Record of Growing

Renewable Energy Sources with Action to Strengthen Solar Market (July 23, 2012), http://www.state.nj.us/governor/news/news/552012/approved/20120723a.html.

Acting pursuant to subsection (t) of the Act, the Board commenced a proceeding to consider applications for solar projects to be sited on brownfield locations.[1] The Act defines "brownfield" as "any former or current commercial or industrial site that is currently vacant or underutilized and on which there has been, or there is suspected to have been, a discharge of a contaminant." N.J.S.A. 48:3-51.[2] Millenium, the contract purchaser of land most recently used as an apple orchard, submitted an application as part of the Board's proceeding, claiming that its land was a brownfield because the application of agricultural pesticides had left lead and arsenic in the soil. Millenium planned to build a solar electric power generation facility on the property, and the purpose of its

---

[1] Subsection (t) also applies to solar projects located "on an area of historic fill or on a properly closed sanitary landfill facility," N.J.S.A. 48:3-87(t)(1), and the Board also invited applications relating to those properties. However, those provisions of subsection (t) are not addressed in this appeal, because Millenium only claimed that its land was a brownfield.

[2] This definition tracks the language used to define "brownfield site" in the Brownfield and Contaminated Site Remediation Act, N.J.S.A. 58:10B-1, legislation aimed at "urban and suburban areas formerly used for commercial and industrial purposes." N.J.S.A. 58:10B-1.2.

application was to qualify the project for solar renewable energy certificates (SRECs) and other financial subsidies available under the Act.  See N.J.S.A. 48:3-87(t)(1).

In evaluating Millenium's application, the Board consulted with the Department of Environmental Protection (DEP), as required by the Act, N.J.S.A. 48:3-87(t)(1).  On July 19, 2013, the Board rejected Millenium's application, based on DEP's advice that there had been no discharge of a contaminant on Millenium's land, and hence it was not a "brownfield" as defined by the Act.  See N.J.S.A. 48:3-51.  Millenium moved for reconsideration of the Board's decision. On reconsideration, the two agencies agreed that regardless of whether a discharge had occurred, subsection (t) did not apply to Millenium's project because it was to be sited on agricultural property.

Exercising its statutory authority under N.J.S.A. 48:2-40(e) to reopen, modify or rehear its prior decisions, the Board reconsidered the basis for its July decision.  Based on the undisputed factual record, the Board found that Millenium's proposed site was agricultural land, which had been used as an orchard and had been valued, assessed and taxed as farmland pursuant to the Farmland Assessment Act of 1964, N.J.S.A. 54:4-23.1 to -33.  See N.J.S.A. 48:3-87(s).  The Board further found that Millenium had produced no evidence that the property had

ever been used for commercial or industrial purposes, within the Act's definition of "brownfield." See N.J.S.A. 48:3-51. The Board also noted that Millenium had obtained land use approvals to develop the property for residential use. Although the housing development had been stalled by the slow real estate market, the Board reasoned that treating the property as a brownfield would be "contrary to the intent of the Solar Act and [Energy Master Plan] in directing solar development on land that is underutilized or difficult to develop."

Based on its findings, the Board concluded that Millenium's land was not a brownfield for purposes of subsection (t), but rather was farmland subject to subsection (s) of the Act. See N.J.S.A. 48:3-87(s). Consequently, the agency rejected Millenium's attempt to shoehorn its farmland-based application into a proceeding open only to projects that qualified for consideration under subsection (t).[3]

For the guidance of future potential applicants, the Board stated:

> [S]olar projects proposed to be located on land that has been actively devoted to agricultural or horticultural use that is valued, assessed, and taxed pursuant to the

---

[3] The Board previously held a separate proceeding for subsection (s) applications. Apparently, Millenium did not submit an application for this property as part of the Board's subsection (s) proceeding.

Farmland Assessment Act of 1964 at any time within the 10-year period prior to [July 24, 2012] will not be eligible for being designated on a brownfield, . . . for purposes of qualifying for SRECs under Subsection T of the Solar Act.

The agency also directed its staff to draft regulations reflecting its decision.

II

On this appeal, the Board's decision is "entitled to presumptive validity." In re N.J. Am. Water Co., 169 N.J. 181, 188 (2001) (citation and internal quotation marks omitted). Pursuant to N.J.S.A. 48:2-46, this court may

> review any order of the board and . . . set aside such order in whole or in part when it clearly appears that there was no evidence before the board to support the same reasonably or that the same was without the jurisdiction of the board.
>
> [N.J.S.A. 48:2-46.]

We may reverse the agency's decision only if it is "arbitrary, capricious, unreasonable or beyond the agency's delegated powers." N.J. Am. Water, supra, 169 N.J. at 188 (citation and internal quotation marks omitted). With respect to both the Board and the DEP, we review legal issues de novo, but we will ordinarily defer to the agencies' reasonable construction of statutes they are charged with implementing. See In re Pub. Serv. Elec. & Gas Company's Rate Unbundling, 167

N.J. 377, 384 (2001); SJC Builders, LLC v. N.J. Dep't of Envtl. Prot., 378 N.J. Super. 50, 54 (App. Div. 2005).

We agree with the Board that projects sited on agricultural property valued, assessed and taxed as farmland do not qualify as brownfields for purposes of subsection (t). Absent exceptions not relevant here, projects sited on farmland are governed by subsection (s) of the Solar Act, N.J.S.A. 48:3-87(s), which by its terms specifically addresses farmland-based solar projects. Subsection (s) provides in pertinent part:

> [A] solar electric power generation facility that is not net metered or an on-site generation facility and which is located on land that has been actively devoted to agricultural or horticultural use that is valued, assessed, and taxed pursuant to the "Farmland Assessment Act of 1964," P.L.1964, c.48 (C.54:4-23.1 et seq.) at any time within the 10-year period prior to the effective date of P.L.2012, c.24, shall only be considered "connected to the distribution system" if (1) the board approves the facility's designation pursuant to subsection q. of this section; or (2) (a) PJM issued a System Impact Study for the facility on or before June 30, 2011, (b) the facility files a notice with the board within 60 days of the effective date of P.L. 2012, c. 24, indicating its intent to qualify under this subsection, and (c) the facility has been approved as "connected to the distribution system" by the board.
>
> [N.J.S.A. 48:3-87(s) (emphasis added).]

By its unambiguous terms, the Solar Act requires farmland-based applications to be submitted under subsection (s), unless

they are "net metered or an on-site generation facility," N.J.S.A. 48:3-87(s), exceptions which Millenium does not claim apply here. Projects to which subsection (s) applies must satisfy a more stringent set of criteria than applications which are subject to subsection (t). Compare N.J.S.A. 48:3-87(s), and (q), with N.J.S.A. 48:3-87(t) ("Projects certified under this subsection shall be considered 'connected to the distribution system[,]' shall not require such designation by the board, and shall not be subject to board review required pursuant to subsections q. and r. of this section."). Millenium's application was properly rejected, because it should have been submitted under subsection (s), and the proceeding before the Board was limited to applications submitted under subsection (t).

We also agree with the Board that its construction of the Solar Act is consistent with the State's 2011 Energy Master Plan (EMP). N.J. BD. OF PUB. UTIL., N.J. ENERGY MASTER PLAN (2011), http://www.nj.gov/emp/docs/pdf/2011_Final_Energy_Master_Plan.pdf. One goal of the EMP, as reflected in the Solar Act, is to encourage the construction of solar energy facilities on polluted former commercial and industrial land, which is not readily usable for general commercial or residential purposes. Id. at 107. Thus, subsection (t) makes it relatively easy to

obtain financial subsidies for those projects. On the other hand, as the Board's decision noted, in requiring farmland-sited solar projects to satisfy a higher standard, the Legislature also acted consistent with the EMP, which specifically discourages the use of agricultural land for solar projects. See ibid. Those legislative purposes were confirmed in a press release issued by the Governor's Office on the day the Act was signed. See Press Release, Office of the Governor, supra. "[S]uch 'communications from the Executive Branch offer a reliable aid in determining legislative intent.'" State v. Drury, 190 N.J. 197, 212 (2007) (quoting State v. Sutton, 132 N.J. 471, 483 (1993)).

Accordingly, we find no basis to depart from our usual rule of deference to an agency's reasonable construction of a statute it is charged with implementing. See In re PSE&G Rate Unbundling, supra, 167 N.J. at 384; see also SJC Builders, supra, 378 N.J. Super. at 54.

Millenium's appellate arguments are without sufficient merit to warrant discussion beyond these comments. R. 2:11-3(e)(1)(E). Most of Millenium's brief is devoted to criticizing the July 19, 2013 decision and the Board's and DEP's conclusion that there was no discharge on the property. However, because we conclude that the May 21, 2104 decision was correct, those

arguments are irrelevant. Subsection (s) unambiguously precludes a subsection (t) application for a solar project on this property, because it is agricultural land that was valued, assessed and taxed as farmland within the ten-year period prior to the effective date of the Solar Act. See N.J.S.A. 48:3-87(s). Moreover, Millenium produced no evidence that the property was "a former or current commercial or industrial site." See N.J.S.A. 48:3-51.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION