**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2871-22
     A-3945-22
     A-3947-22

IN THE MATTER OF THE
IMPLEMENTATION OF <u>L.</u>
2012, <u>C.</u> 24, THE SOLAR
ACT OF 2012

IN THE MATTER OF A NEW
JERSEY SOLAR TRANSITION
PURSUANT TO <u>P.L.</u> 2018, <u>C.</u>17

IN THE MATTER OF A NEW
JERSEY SOLAR TRANSITION
PURSUANT TO <u>P.L.</u> 2018, <u>C.</u> 17 -
ORDER GRANTING AN UP TO
12-MONTH EXTENSION FOR
PROJECTS SEEKING AN INCENTIVE
PURSUANT TO SUBSECTION (T)
IN THE SOLAR TRANSITION
INCENTIVE PROGRAM – MOTION
FOR RECONSIDERATION.

_____

IN THE MATTER OF THE
IMPLEMENTATION OF <u>L.</u> 2012, <u>C.</u>
24, THE SOLAR ACT OF 2012

IN THE MATTER OF THE SOLAR
TRANSITION PURSUANT TO <u>P.L.</u>

2018, <u>C.</u> 17 – APPLICATION FOR
CERTIFICATION OF SOLAR FACILITY
AS ELIGIBLE FOR TRECS PURSUANT TO
SUBSECTION (T) OF THE SOLAR ACT
OF 2012

WINSLOW LF SOLAR FARM, LLC - SOLAR
ACT SUBSECTION (T) - BLOCK 8802,
LOT 1, BLOCK 9101, LOT 2, BLOCK
9102, LOT 1.

_____

IN THE MATTER OF THE
IMPLEMENTATION OF <u>L.</u> 2012, <u>C.</u> 24,
THE SOLAR ACT OF 2012

IN THE MATTER OF A NEW
JERSEY SOLAR TRANSITION
PURSUANT TO <u>P.L.</u> 2018, <u>C.</u> 17
APPLICATION FOR CERTIFICATION
OF SOLAR FACILITY AS ELIGIBLE
FOR TRECS PURSUANT TO
SUBSECTION (T) OF THE SOLAR
ACT OF 2012

PASADENA PEMBERTON SOLAR
FARM, LLC-APPLICATION FOR
SOLAR ACT SUBSECTION (T),
BLOCK 906, LOT 1.01.

_____

Submitted October 22, 2024 – Decided November 4, 2024

Before Judges Susswein, Perez Friscia and Bergman.

On appeal from the New Jersey Board of Public Utilities, Docket Nos. EO12090832V, QO19010068 and QO22090551 in Docket No. A-2871-22; Docket

Nos. EO12090832V, QO19010068, and QO21081079 in A-3945-22; Docket Nos. EO12090832V, QO19010068, and QO21050822 in A-3947-22.

Genova Burns, LLC, attorneys for appellant CEP Renewable, LLC (Keneth J. Sheehan, of counsel and on the briefs).

Brian O. Lipman, Director, attorney for respondent New Jersey Division of Rate Counsel (Sarah H. Steindel, Assistant Deputy Rate Counsel, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Board of Public Utilities (Sookie Bae, Assistant Attorney General, of counsel; Brandon C. Simmons, Deputy Attorney General, on the brief in A-2871-22; Steven A. Chaplar, Deputy Attorney General, on the briefs in A-3945-22 and A-3947-22).

PER CURIAM

In these three back-to-back appeals we have consolidated for the purposes of issuing a single opinion, CEP Renewables, LLC (CEP) challenges a series of orders entered by the New Jersey Board of Public Utilities (BPU). The New Jersey Division of Rate Counsel urges we reject CEP's arguments and affirm the BPU's orders. Having reviewed the record, parties' arguments, and governing legal principles, we affirm.

Under A-2871-22, CEP appeals from the April 26, 2023 BPU order denying CEP's motion for reconsideration of the BPU's August 17, 2022 order,

which permitted only two six-month extensions for solar projects filed pursuant to N.J.S.A. 48:3-87(t) (subsection (t)). The August order permitted the BPU to grant extensions to solar subsection (t) project registrants that had a conditional certification or had timely applied for conditional certification that were pending review under the Transition Incentive (TI) program. CEP contends the BPU's orders are arbitrary, capricious, and unreasonable because they did not provide greater extensions to solar project developers with subsection (t) projects under the TI program pending completion of the PJM Interconnection, LLC (PJM) process.

Under A-3945-22, CEP appeals from the July 12, 2023 BPU order denying CEP's subsection (t) application for a conditional certification for a solar facility at the Winslow site because it was not a properly closed sanitary landfill facility.

Under A-3947-22, CEP appeals from the July 26, 2023 BPU order denying CEP's subsection (t) application for a conditional certification for a solar facility at the Pemberton site because it was not a properly closed sanitary landfill facility.

I.

To give context to the issues presented in these appeals, we summarize the facts and procedural history in view of the governing statutory and regulatory framework.

The Clean Energy Act (CEA), P.L. 2018 c. 17, was enacted on May 23, 2018. N.J.S.A. 48:3-51 to -87. The CEA charged the BPU with closing the Solar Renewable Energy Certificate Registration Program (SRP), which was the solar incentive program at the time, launching an interim incentive program, and transitioning to the Successor Solar Incentive (SuSI) program. See N.J.S.A. 48:3-87(d)(3). On April 6, 2020, the BPU ordered the closure of the SRP effective April 30. In re Closure of the SREC Registration Program Pursuant to P.L. 2018, c. 17, No. QO18070698, 2020 N.J. PUC LEXIS 259, at *11 (Bd. of Pub. Utils. Apr. 6, 2020). N.J.S.A. 48:3-87(t)(1) required the BPU to "establish a financial incentive . . . designed to supplement the [Solar renewable energy certificates (SREC)][1] generated by the facility in order to cover the additional

_____

[1] A "'[s]olar renewable energy certificate' or 'SREC' means a certificate issued by the [BPU] or its designee, representing one megawatt hour (MWh) of solar energy that is generated by a facility connected to the distribution system in this State and has value based upon, and driven by, the energy market." N.J.S.A. 48:3-51.

cost of constructing and operating a solar electric power generation facility on a brownfield, on an area of historic fill[,] or on a properly closed sanitary landfill facility."

On December 6, 2019, the BPU launched the TI program. See N.J.A.C. 14:8-10.1 to - 10.7; see also 52 N.J.R. 1048(a) (May 18, 2020). The BPU's TI program was "designed to provide a bridge between the [SRP] and . . . [the SuSI program] under development." N.J.A.C. 14:8-10.1. Under the TI program, N.J.A.C. 14:8-10.4(f) permitted developers to "submit a complete registration package to the [BPU] prior to the [BPU]'s announcement of the opening of [the SuSI program]" to receive fixed solar energy incentives.[2]

The TI program provided Transition Renewable Energy Certificates (TRECs) for each MWh of electricity produced. N.J.A.C. 14:8-10.6(b). TRECs were permitted to be sold at values fixed by the BPU. N.J.A.C. 14:8-10.5. The BPU maintained oversight of the temporary TI program as an interim bridge program until the SuSI program opened to applicants. Each solar program

---

[2] Developers filing a subsection (t) application under the TI program were required to follow "N.J.S.A. 48:3-87(t), the Solar Act of 2012, and the B[PU]'s [i]mplementing [o]rders." N.J.A.C. 14:8-10.4(i). Additionally, "[d]evelopers [had to] apply to the B[PU] for conditional certification of projects seeking eligibility for [Transition Renewable Energy Certificates] using the same process developed for SREC eligibility." Ibid.

6

provided developers different incentive subsidy schemes, which were funded by retail electricity ratepaying customers, aimed at promoting solar development in New Jersey. The SuSI program was launched on August 28, 2021. N.J.A.C. 14:8-11-1 to -12.8; In re a New Jersey Solar Transition Pursuant to P.L. 2018, c. 17, No. QO19010068, 2021 N.J. PUC LEXIS 299 (Bd. of Pub. Utils. July 28, 2021). The BPU determined the SuSI program incentives, N.J.A.C. 14:8-11.1 to -11.10, based on a competitive solicitation process and launched the Competitive Solar Incentive (CSI) program, which offered incentives to grid supply solar generation facilities. See N.J.A.C. 14:8-11.10; N.J.S.A. 48:3-117.

Pursuant to subsection (t),[3] solar developers could apply to develop and operate "solar electric power generation facilit[ies] . . . on a brownfield, on an area of historic fill[,] or on a properly closed sanitary landfill facility" and receive TRECs. N.J.S.A. 48:3-87(t)(1). In New Jersey, solar energy policies have long "promot[ed] the installation of solar projects on contaminated industrial and commercial sites that would likely otherwise remain unproductive, while 'discouraging large-scale solar projects on farmland and

---

[3] Subsection (t) "means the provision of the Solar Act of 2012 that provides the criteria for SREC eligibility for grid supply solar installations located on properly closed sanitary landfills, brownfields, or areas of historic fill." N.J.A.C. 14:8-10.2.

open space.'" In re Implementation of L. 2012, C. 24, N.J.S.A. 48:3-87(t), 443 N.J. Super. 73, 75 (App. Div. 2015).

A contaminated site or landfill is defined to mean "(1) any currently contaminated portion of a property on which industrial or commercial operations were conducted and a discharge occurred . . . or (2) a properly closed sanitary landfill facility and its associated disturbed areas." N.J.S.A. 48:3-51. A "[p]roperly closed sanitary landfill facility" is "a sanitary landfill facility, or a portion of a sanitary landfill facility, for which performance is complete with respect to all activities associated with the design, installation, purchase, or construction of all measures, structures, or equipment required by the Department of Environmental Protection (DEP)." Ibid.

Subsection (t) projects are grid supply solar projects. N.J.A.C. 14:8-10.2. Grid supply projects are required to go through an application process with a third-party reviewer, PJM. See N.J.A.C. 14:8-10.4(h)(7). PJM is an independent regional systems operator that manages a high-voltage electric transmission grid and administers the regional transmission network, which services New Jersey and other states. PJM, Fed. Energy Regul. Comm'n, https://www.ferc.gov/industries-data/electric/electric-power-markets/pjm (last updated Sept. 19, 2024). The TI program "shall be comprised of TRECs that

are created by [PJM Environmental Information Services][4] . . . for each megawatt-hour generated and metered by eligible solar projects." N.J.A.C. 14:8-10.3. Subsection (t) projects are required to finish the PJM interconnection process prior to receiving BPU's permission to operate (PTO). N.J.A.C. 14:8-10.4(j), -2.4(b)(7)(iii).

PJM experienced a significant increase in developers' applications seeking to proceed through the interconnection process. PJM, Interconnection Process Reform Problem Statement 1 (Apr. 8, 2021) [hereinafter PJM Problem Statement]; see also Proposed Tariff Revisions for Interconnection Process Reform at 30 fig. 9, PJM Interconnection, L.L.C., No. ER22-2110-000 (FERC June 14, 2022). In 2022, PJM filed proposed reforms to its process with the Secretary of the Federal Energy Regulatory Commission (FERC) seeking to address its significant application backlog and "timely process New Service Requests." Id. at 1. PJM advised, "The volume of New Service Requests has more than tripled over the past three years causing the number of queue projects" to increase and resulting in delays for new customers "proceeding to a final

---

[4] We note PJM Environmental Information Services is "the unregulated affiliate of PJM Interconnection LLC, that operates the Generation Attribute Tracking System." N.J.A.C. 14:8-11.2.

agreement and beginning the implementation phase of their projects." PJM Problem Statement at 1.

The BPU issued TI program registrants seeking certification for "the TREC eligibility requirements" a: full certification, conditional certification, or denial of certification. See N.J.A.C. 14:8-2.4(r), -10.4(j). After the BPU issued a conditional certification to a solar developer, pursuant to N.J.A.C. 14:8-10.4(f)(4)(ii)(3), the registrant's certification expired for "[s]ubsection (t) projects (that is, projects granted conditional certification pursuant to N.J.S.A. 48:3-87(t)) [at] the two-year anniversary of the registrant's [BPU] [o]rder granting conditional certification." The registrant's solar facility was required to "commence commercial operations and submit a post-construction certification package prior to the expiration of the conditional registration." N.J.A.C. 14:8-10.4(f)(4)(iii). The TI program closed on August 27, 2021, and the SuSI program opened on August 28. In re a New Jersey Solar Transition, 2021 N.J. PUC LEXIS 299, at *12; In re a New Jersey Solar Successor Incentive Program Pursuant to P.L. 2018, c. 17, No. QO20020184, 2021 N.J. PUC LEXIS 300, at *123, *131 (Bd. of Pub. Utils. July 28, 2021).

A. CEP'S Challenge to the BPU's Subsection (t) Project Extensions Under the TI Program

CEP is a developer of solar facilities in New Jersey. CEP had multiple subsection (t) solar projects under the TI program pending before the BPU. CEP had applications delayed in the PJM interconnection process.

On August 17, 2022, the BPU ordered that TI program registrants were "permit[ted] up to two six-month extensions of time [for] [s]ubsection (t) projects . . . in the TI [p]rogram, for a total of up to [twelve] months."[5] The Administrative Code authorized the BPU to relax a registrant's time to complete construction and commence commercial operation under the TI program by

---

[5] We note on September 12, 2023, the Legislature enacted N.J.S.A. 48:3-121(a), which provided developers of a qualified solar electric power generation facility "two years beyond what otherwise would be the deadline for the qualified solar electric power generation facility to achieve commercial operation." The statute further states, "[t]he . . . extension shall protect the qualified solar electric power generation facility from forfeiting . . . eligibility to receive financial incentives provided by the solar incentive program for which the application was made." N.J.S.A. 48:3-121(a)(3). We have considered CEP's appeal under A-2871-22 on the merits as CEP contends the BPU's extension is arbitrary, capricious, and unreasonable for failing to afford solar developers sufficient time commensurate with PJM's backlog delays. Furthermore, this appeal addresses a matter of public concern.

providing extensions to registrants.[6]  The BPU balanced the "increase[ed] delays in the PJM interconnection process" and that the BPU's "rules provid[ed] [s]ubsection (t) projects two . . . years after they receive certification from the [BPU] to reach [PTO] before their registration expire[d]."  The BPU observed "a single blanket extension granted via [BPU] [o]rder would be more equitably levied and less administratively burdensome than consideration of extension requests on a case-by-case basis."  Further, it concluded:  developers "have been aware of [PJM] delays"; the "interim nature of the TI [p]rogram ha[d] been consistently communicated"; and the regulation's two-year project completion

---

[6]  The BPU is permitted to waive its rules:

> (b) In special cases and for good cause shown, the [BPU] may, unless otherwise specifically stated, relax or permit deviations . . . .
>
> 1. The [BPU] shall, in accordance with the general purposes and intent of its rules, waive section(s) of its rules if full compliance with the rule(s) would adversely affect the ratepayers of a utility or other regulated entity, the ability of said utility or other regulated entity to continue to render safe, adequate and proper service, or the interests of the general public[.]
>
> [N.J.A.C. 14:1-1.2(b).]

requirement and absence of available extensions was "embodied in the TI [r]ules." The BPU "balance[d] the TI [p]rogram['s] complementary goals," concluding the "general purpose [of the TI program] [wa]s to provide a smooth transition to the [SuSI] [p]rogram and support New Jersey's thriving solar market . . . at the lowest possible cost," and a limited "extension to [s]ubsection (t) projects" was warranted.

On August 30, 2022, CEP moved before the BPU pursuant to N.J.A.C. 14:2-8.6(a) for reconsideration of the August 17 order. On April 26, 2023, the BPU denied CEP's motion for reconsideration and explained: "while the [BPU] anticipated that 'many' [s]ubsection (t) projects would benefit, it did not intend to guarantee every . . . applicant all the time needed," and "[i]t specifically rejected . . . open-ended extension." The BPU granted extensions for projects "'ready to move forward and deliver clean energy to New Jersey customers quickly,'" and the BPU was not "responsible for guaranteeing these projects a specific incentive through a particular program." Regarding CEP's arguments that the BPU misstated the PJM timeline for registrants to receive a final agreement on TI program projects filed between October 2020 and September 2021, the BPU acknowledged its error, recognizing the correct estimated timeline was November 2026. It found the timeline error was of no significance

13

and "had no material effect" because the BPU's order granting up to a twelve-month extension was "aimed only at those projects" near completion, and "its analysis and . . . ruling would have been the same." The BPU disagreed with CEP's position that the BPU should "take all the risk in the PJM queue process, shift it off the developers, and place it squarely [with] ratepayers."

Further, the BPU clarified that its granting of extensions to registrants due to PJM's delays was not intended as a guarantee of "an indefinite commitment to the TI [p]rogram's [s]ubsection (t) incentive levels" because it "would not be in the interest of ratepayers." The BPU addressed CEP's contention that it confused the distinction between the PJM's "completion of the interconnection process" and "final agreement," explaining there was no term confusion because the PJM process was clearly required to obtain a final agreement. Regarding CEP's knowledge of delays, the BPU cited the PJM's filed FERC letter acknowledging "the significant growth in the number of generation facilities seeking to interconnect to the PJM grid . . . and the associated increasing backlog." With the BPU's one-year extension, the deadline to begin operations for subsection (t) projects under the TI program became three years. See In re a New Jersey Solar Transition Pursuant to P.L. 2018, C.17, No. QO19010068,

14

2022 N.J. PUC LEXIS 246, at *22 (Bd. of Pub. Utils. Aug. 17, 2022); N.J.A.C. 14:8-10.4(f)(4)(ii)(3).

On appeal, under A-2871-22, CEP argues the BPU's orders are arbitrary, capricious, and unreasonable warranting reversal because the BPU: made a factual mistake in the estimated completion timeline for solar subsection (t) projects filed under the TI program for interconnection with PJM before September 2021; failed to provide an actual timeframe "use[ful] for most" project developers; granted extensions for "registrants within the Community Solar Energy Pilot Program (CSEP)"; and placed the risk of solar facility development due to the PJM delays on the developer.

B. CEP's Conditional Certification Applications

On May 20, 2021, the BPU received CEP's application pursuant to the Solar Act for a conditional certification for the Pasadena Pemberton Solar Farm (Pemberton site) as a subsection (t) solar facility project. CEP requested a conditional certification for eligibility to generate TRECs on its proposed solar electric generation facility at the Pemberton site pursuant to the TI program. It maintained the Pemberton site "has been treated as closed by NJDEP since 1984, and only a [m]inor [d]isruption [p]ermit [a]pplication has been opened in the last almost [forty] years . . . [and] should fall squarely within the category for

the issuance of a conditional approval."  On November 9, the BPU transmitted CEP's application to the DEP to determine whether the site was a properly closed sanitary landfill facility.  See N.J.S.A. 48:3-51, -87(t) ("[T]he [BPU] shall . . . provide [TRECs] to owners of solar . . . projects certified by the [BPU], in consultation with the DEP, as being located on a . . . properly closed sanitary landfill facility.").

In May 2023, the DEP issued an advisory memorandum addressing "the land use classification and remediation status of the proposed [Pemberton] site."  The DEP concluded the site was not a properly closed sanitary landfill because in 2022 it had granted Pemberton Township a minor disruption permit to perform "a ground penetrating radar . . . survey, [a] test pit and boring excavation, . . . groundwater well redevelopment and sampling, and [an] install[ation] of probes to evaluate landfill gases," which had not been completed.  The DEP's records indicated no "final grading and placement of a final cover has ever occurred."  Further, at the time of DEP's review, it had "not received a [l]andfill [c]losure and [p]ost-[c]losure [p]lan."  BPU staff recommended CEP's subsection (t) conditional certification application be denied after it considered the DEP's site determinations and CEP's application, "which acknowledge[d] that the [Pemberton] landfill [was] not properly closed."

16

On July 26, 2023, the BPU issued an order denying CEP's application after it found the Pemberton site "d[id] not meet the Solar Act's definition of a 'properly closed sanitary landfill.'"

On August 25, 2021, the BPU received CEP's application for a conditional certification for its affiliate Winslow Landfill Solar Farm, LLC (Winslow site) as a subsection (t) solar facility project. CEP amended its application on September 23. CEP applied for a conditional certification for eligibility to generate TRECs on a proposed solar electric generation facility at the Winslow site pursuant to the TI program. Similar to the argument for the Pemberton site, CEP maintained the Winslow site "has been closed since 1991 . . . [and] finalization of the [l]andfill [c]losure permit should fall squarely in the category for . . . conditional approval." In the Winslow site application CEP wrote "[t]he landfill is not closed according to []DEP's and Pineland's current regulations." The BPU transmitted CEP's application to the DEP for a review and determination on whether the site was a properly closed sanitary landfill. See N.J.S.A. 48:3-51, -87(t).

After the DEP reviewed CEP's Winslow site application, it provided the BPU an advisory memorandum in May 2023 addressing the "land use classification and [] remediation status of the proposed site." The DEP

17

determined the site did "not constitute a 'properly closed sanitary landfill facility'" under N.J.S.A. 48:3-51 because: no closure plan for the site had been received for DEP's approval as of May; a 2011 closure plan required "capping the landfill, collecting and managing landfill gases, and collecting and managing stormwater"; the site's "landfill closure must meet requirements of the Pinelands Comprehensive Management Plan, as well as any applicable [DEP] requirements under Solid Waste and Site Remediation rules"; and the "site is not fully remediated and has numerous steps to take before installing a final cap." On July 12, 2023, the BPU issued an order denying CEP's application after it reviewed the Winslow site application, DEP's determination, and the BPU staff's recommendation because the Winslow site was not a properly closed sanitary landfill.

On appeal, CEP raises similar arguments for reversal under A-3945-22 and A-3947-22. CEP contends the BPU's orders incorrectly denied conditional certifications for subsection (t) solar facility projects under the TI program solely because the sites were not closed sanitary landfill facilities at the time of the applications. CEP contends the BPU orders are arbitrary, capricious, and unreasonable because the decisions: are not in keeping with legislative intent, statutory language, regulations, and policies; involve no analysis or

consideration of the matter and reflect a failure to consider the reality of the applications; and are not in keeping with the policy of the State on solar development and the use of property for solar development.

II.

Our scope of review of administrative agency determinations is limited. Bd. of Educ. v. M.N., 258 N.J. 333, 342 (2024). "[T]he BPU's power to regulate utilities is broad." In re Centex Homes, LLC, 411 N.J. Super. 244, 255 (App. Div. 2009). Accordingly, "the BPU's 'rulings are entitled to presumptive validity.'" In re N.J. Am. Water Co., 169 N.J. 181, 188 (2001) (quoting In re Petition of Jersey Cent. Power & Light Co., 85 N.J. 520, 527 (1981)). While we are not bound to an agency's statutory interpretation, "[w]e will ordinarily defer to an agency's reasonable construction of statutes it is charged with implementing." In re Competitive Solar Incentive ("CSI") Program Pursuant to P.L. 2021, C.169, 478 N.J. Super. 341, 349 (App. Div. 2024). "Like all matters of law, we apply de novo review to an agency's interpretation of a statute or case law." In re Proposed Constr. of Compressor Station (CS327), 258 N.J. 312, 327 (2024) (quoting Russo v. Bd. of Trs., 206 N.J. 14, 27 (2011)).

"'The Legislature has endowed the BPU with broad power to regulate public utilities . . . [and] considerable discretion in exercising those powers.'"

19

In re Ownership of Renewable Energy Certificates ("RECS") under the Elec. Disc. & Energy Competition Act, 389 N.J. Super. 481, 492 (App. Div. 2007) (alteration in original) (quoting In re Elizabethtown Water Co., 107 N.J. 440, 449 (1987)). On appeal, our review of an agency's action focuses on:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Allstars Auto. Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

An appellate court will not disturb an action by the BPU unless it is found to be "'arbitrary, capricious, unreasonable, or beyond the agency's delegated powers.'" In re N.J. Am. Water Co., 169 N.J. at 188 (quoting In re Amend. of N.J.A.C. 8:31B-3.31, 119 N.J. 531, 544 (1990)). N.J.S.A. 48:2-46 provides us "jurisdiction to review any order of the [BPU] and to set aside such order in whole or in part when it clearly appears that there was no evidence before the [BPU] to support the same reasonably or that the same was without the jurisdiction of the [BPU]."

III.

Guided by these legal principles, we address each appeal in turn regarding the sufficiency of the BPU's orders.

We first consider CEP's appeal of the BPU's order denying reconsideration of its order, which granted TI program registrants up to two six-month extensions for solar subsection (t) projects. CEP contends the BPU's decisions were arbitrary, capricious, and unreasonable because the BPU relied on a mistaken timeframe for the completion of the PJM interconnection process. We are not persuaded.

The BPU's reconsideration decision acknowledged it miscalculated the PJM's expected 2025 completion timeline for solar subsection (t) projects filed for the PJM interconnection process between October 2020 and September 2021. The PJM's actual projected completion timeline was "between September and November 2026." The BPU's reconsideration order explained the date error was immaterial, highlighted the reasons for granting the limited extensions for up to one year, and incorporated its August 2022 order's findings and conclusions.

The BPU's August 2022 order specifically rejected open-ended extensions for subsection (t) projects and explained the extensions were intended to move forward projects almost ready to quickly deliver customers clean energy.

21

Specifically, the BPU's order elaborated that the extensions were intended to "appropriately slot projects that are more than three . . . years away . . . from achieving PTO into the future CSI program," which was implemented under the SuSI program. It is undisputed the TI program was an interim bridge program until the BPU established the SuSI program and that each program provided developers different solar facility incentives.

We find no merit in CEP's argument that the BPU's August order was arbitrary, capricious, and unreasonable because it failed to provide sufficient extensions to benefit more developers with pending subsection (t) projects delayed by the PJM interconnection process. As recognized by the BPU, a paramount consideration was the "interest of ratepayers" and the detriment in not transitioning projects into the legislatively mandated new programs. The BPU sufficiently reasoned the TI rules balance "costs and benefits to ratepayers," support "growth of the solar industry," and have the "general purpose . . . to provide a smooth transition to [the SuSI program]."

Contrary to CEP's contention, project developers' success was not the only consideration. We emphasize N.J.A.C. 14:8-10.4(f)(4)(i)(3) put the solar facility developers seeking subsection (t) project certification on notice of the established two-year timeframe to PTO. Further, developers were advised that

22

subsection (t) projects not completed were to transition to the SuSI program. See In re a Solar Successor Incentive Program, 2021 N.J. PUC LEXIS 300, at *53-54. We conclude the BPU's orders provided sufficient findings that balanced the varying policy considerations, including the solar facility developers' interests in the extensions. Thus, we discern no error in the BPU's order denying reconsideration of the established two six-month extensions of up to one year.

For the sake of completeness, we address CEP's argument that the BPU arbitrarily granted extensions for "registrants within the . . . [CSEP] program" while not providing greater extensions to TI program developers. We generally decline to consider questions or issues not presented below when an opportunity for such a presentation was available. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973); See also D'Ambrosio v. Dep't of Health and Senior Srvs., 403 N.J. Super. 321, 334 (App. Div. 2008) (recognizing claims not presented in an earlier proceeding are inappropriate for consideration on appeal unless the claims concern matters of great public interest). Because we believe the issues presented here are of public concern, we have considered CEP's contention of disparate program extensions but conclude it is without merit. The pilot CSEP provided the opportunity for "residents across the state to take part in the clean

23

energy transition." In re Cmty. Solar Energy Program, No. QO22030153, 2023 N.J. PUC LEXIS 217, at *62 (Bd. Pub. Utils. Aug. 16, 2023). On January 17, 2019, the community solar pilot program was launched with the purpose to study and provide "necessary experience in implementing community solar in New Jersey" for "low-to moderate-income . . . customers." Id. at *2, *4. Further, it "laid the groundwork for the development and implementation of a permanent, full scale CSEP in conformance with the [CEA]." Id. at *4. Providing the BPU with the requisite necessary deference and recognizing there are distinct policy considerations between the CSEP and TI programs, we discern no reason to disturb the BPU's decision to grant TI program subsection (t) projects extension of up to one year.

We now turn to CEP's appeal, under A-3947-22, regarding the BPU's denial of the Pemberton site's subsection (t) conditional certification. CEP contends it was "not in keeping with the legislative intent, statutory language, regulations and policy for the BPU to deny their application for conditional certification based on the finding that the Pemberton site was not a properly closed sanitary landfill." We are again unpersuaded.

The BPU's order provided sufficient analysis and findings, which were not contrary to N.J.S.A. 48:3-51, N.J.S.A. 48:3-87(t), or its January 2013 order. The

BPU's January order acknowledged the DEP's concerns regarding the "construction of solar generation on" properly closed sanitary landfills and other sites. In re Implementation of L. 2012, C. 24, The Solar Act of 2012, No. EO12090832V, 2013 N.J. PUC LEXIS 27 (Bd. of Pub. Utils. Jan. 24, 2013). The BPU's January order approved the certification process framework and noted "[f]or [sites] proposed to be located on properly closed landfills, conditional certification will be recommended by [the] DEP when specific action must be taken to protect the integrity of the closed landfill." Here, CEP conceded the Pemberton site was not a properly closed sanitary landfill facility because "a permit remained needed, and . . . the development of the solar facility . . . require[d] the proper final closure before the construction." Contrary to CEP's contention, the BPU's January order does not support the proposition that a conditional certification may be given for a site, which is not a properly closed sanitary landfill facility, based on a developer's future intention to procure a closure plan to rehabilitate the site while proceeding through the BPU's subsection (t) certification process. The BPU's January order specifically contemplated a developer's continued maintenance of a closed landfill's integrity, as required by the DEP.

25

Further, we reject CEP's argument that the BPU did not consider "the actual state of the [Pemberton]" site and the developer's ability to reach a properly closed sanitary landfill facility on the site before construction and operation. A "properly closed sanitary landfill facility" must have completed all the DEP's requirements "to prevent, minimize, or monitor pollution or health hazards resulting from a sanitary landfill facility." N.J.S.A. 48:3-51. We recognize CEP's strong public policy arguments that solar energy projects and the remediation to properly close landfills are encouraged, as established in the Energy Master Plan. N.J. Bd. of Pub. Util., N.J. Energy Master Plan, Section 6, at 112 (2019); N.J.S.A. 52:27-15(b). Nevertheless, the BPU sufficiently found the well-supported public policy reasons for a "properly closed sanitary landfill [facility]," "prevent[ing] contamination" and protecting the environment and public health, substantially outweighed the interests of a solar developer in proceeding with certification to operate a solar facility. Undisputedly, the Pemberton site required more than continued monitoring measures commensurate with what is necessary for a closed sanitary landfill.

Turning to CEP's appeal under A-3945-22, CEP also challenges the BPU's denial of the Winslow site's conditional certification. CEP similarly conceded the Winslow site was not a properly closed sanitary landfill facility, as "a permit

remained needed, and that the development of the solar facility would require the proper final closure before the construction." Further, CEP again acknowledged "at the time of the application, the [Winslow site] was not a properly closed sanitary landfill [facility]." Moreover, it appears unrefuted that Winslow Township's appointment of CEP as the Winslow site's redeveloper was revoked in November 2021. The DEP provided a reasoned determination why the Winslow site did not meet the criteria for a properly closed sanitary landfill facility as it required remedial measures and a closure plan.

Notably, the DEP determined there was no closure plan for the Winslow site as of May 2023, and the prior closure plan required "capping the landfill, collecting and managing landfill gases, and collecting and managing stormwater." After reviewing CEP's application, the BPU properly determined the Winslow site was not "complete with respect to all activities associated with the design, installation, purchase, or construction of all measures, structures, or equipment required by the . . . [DEP] . . . to prevent, minimize, or monitor pollution or health hazards resulting from a sanitary landfill facility." N.J.S.A. 48:3-51. CEP provides no support for its argument that the BPU should have issued a conditional certification for the Winslow site because it "was essentially" a closed sanitary landfill facility that only required limited

remediation. We discern no error in the BPU's decision that the site was not a "properly closed sanitary landfill [facility]." The BPU's decision provides ample findings based on substantial evidence in the record. See Allstars Auto Grp., Inc., 234 N.J. at 157 (quoting In re Stallworth, 208 N.J. at 194).

Likewise, we are unpersuaded by CEP's argument that the BPU's decision deviated from the State's solar policy. CEP's regulatory interpretation that a sanitary landfill closure may be obtained after remedial measures are completed using TI program incentives funding, derived from utility ratepayers' subsidies, is without merit. See N.J.S.A. 48:2-21. Again, CEP has failed to cite support for its argument that proper closure is sufficient if completed prior to "the installation of the solar array." The necessary remedial measures and a closure site plan were required before the DEP would deem the Winslow site a properly closed sanitary landfill facility and consequently, before the BPU could issue a subsection (t) conditional certification.

Accordingly, we find no basis to depart from our general rule of deference to the BPU's decisions, which are amply supported by the record, and conclude the BPU reasonably construed the applicable statutes and regulations it is charged with implementing. See In re Pub. Serv. Elec. & Gas Co., 167 N.J. 377, 384 (2001).

To the extent not addressed, appellant's remaining contentions lack sufficient merit to warrant discussion in a written opinion.  R. 2.11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION