**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0424-24

IN THE MATTER OF THE NEW
JERSEY SOLAR TRANSITION
PURSUANT TO P.L. 2018, C. 17 –
APPLICATION FOR
CERTIFICATION OF SOLAR
FACILITY AS ELIGIBLE FOR
TRECS PURSUANT TO
SUBSECTION (T) OF THE SOLAR
ACT OF 2012 – KOBER SOLAR
AUTO PARTS, INC.

_____

Argued October 29, 2025 – Decided December 29, 2025

Before Judges Gummer, Paganelli and Vanek.

On appeal from the New Jersey Board of Public Utilities, Docket No. QO21081098.

Michael H. Freeman argued the cause for appellant CEP Renewables, LLC (Genova Burns LLC, attorneys; Kenneth J. Sheehan, of counsel and on the briefs).

Jordan K. Mitchell, Deputy Attorney General, argued the cause for respondent New Jersey Board of Public Utilities (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Jordan K. Mitchell, on the brief).

Andrew M. Kuntz, Assistant Deputy Rate Counsel, argued the cause for respondent New Jersey Division of Rate Counsel (Brian O. Lipman, Director, attorney; Megan C. Lupo, on the brief).

PER CURIAM

CEP Renewables, LLC (CEP)[1] appeals from a final agency decision of the Board of Public Utilities (the BPU) denying its application for conditional certification of a solar energy project seeking Transitional Renewable Energy Certificates (TRECs) under the Transition Incentive (TI) program pursuant to N.J.S.A. 48:3-87(t). We affirm.

I.

We glean the facts and procedural history from the record. On August 26, 2021, CEP applied under N.J.S.A. 48:3-87(t) (subsection (t)) of the Solar Act of 2012, N.J.S.A. 48:3-51 to -87 (the Solar Act) for conditional certification of the Kober Solar Farm (Kober Site) as a subsection (t) solar facility project. CEP requested a conditional certification for eligibility to receive TRECs for its proposed solar electric generation facility at the Kober Site pursuant to the TI program. In its application, CEP described the Kober Site as a former auto

---

[1] Appellant is variously identified as Kober Solar Auto Parts, Inc., CEP Renewables, LLC, and Kober Solar Farm, LLC in the record. We refer to the appellant as CEP, consistent with the Notice of Appeal.

junkyard and salvage yard operating as Kober's Auto Parts and Kober's Truck Parts since the 1950s. Kober Auto Parts was registered as an auto recycler with the New Jersey Department of Environmental Protection (DEP) Solid Waste Program.

At the time of the application, CEP had entered into an agreement to purchase the Kober Site from the Estate of William G. Kober. CEP acknowledged the Kober Site had been tax assessed as farmland and that the now-deceased prior owner, William G. Kober, had used portions of the property as a "farm for animal feed." However, CEP claimed the assessment did not reflect "the widespread industrial use of the junkyard auto recycling business" and that the "remaining soils do not support a sustainable agricultural crop due to the contamination and metal debris at the site."

On December 10, 2021, the BPU forwarded CEP's application to the DEP to determine whether the Kober Site was a brownfield that was eligible to receive TI solar incentives.[2] After its review, the DEP issued an advisory memorandum, concluding the site did not qualify as a brownfield because the land "has been actively devoted to agricultural or horticultural use that is valued,

---

[2] A "brownfield" is "any former or current commercial or industrial site that is currently vacant or underutilized and on which there has been, or there is suspected to have been, a discharge of a contaminant." N.J.S.A. 48:3-51.

assessed, and taxed pursuant to the Farmland Assessment Act [(FAA), N.J.S.A. 54:4-23.1] . . . within the ten . . . year period prior to July 24, 2012" (the Farmland Lookback). The DEP found:

> Current and historical aerial imagery . . . indicate[d] the location of the proposed . . . solar array, [the Kober Site], is and has been devoted to agriculture or horticulture, and hence taxed as such by the local tax assessor. The [DEP]'s 2002 [i]nfrared [i]magery, the 2007 [c]olor [i]magery[,] and the 2012 [c]olor [i]magery of the property show all, or portions of each, parcel(s) for the proposed . . . solar array, as being utilized for agriculture or horticulture use. . . .
>
> Additionally, consultation with the State Agriculture Development Committee (SADC) staff revealed that the portion of the [property], is a targeted farm in Harmony's Farmland Preservation Plan adopted in October 2021. . . .

The DEP concluded the Kober Site had been actively devoted to agricultural or horticultural use and, therefore, did not constitute a brownfield and did not qualify for TRECs under subsection (t).

On June 27, 2024, the BPU denied CEP's subsection (t) application, based on its determination that N.J.S.A 48:3-87(s) (subsection (s)) imposes additional restrictions "on land that has been actively devoted to agricultural or horticultural use that is valued, assessed, and taxed pursuant to the [FAA]" at any time within the Farmland Lookback. Specifically, the BPU found the

proposed site was qualified farmland during the Farmland Lookback, predicated on prior certified annual farmland applications from 2014 to 2021 evidencing agricultural use, photographic color aerial imagery that revealed the Kober Site was actively farmed in 2002, 2007 and 2012, the Kober Site's location within the Warren County Agricultural Development Area, and tax records from 2004 to 2021 which demonstrated the Kober Site was assessed as qualified farmland.

CEP sought reconsideration of the BPU's denial. Because the BPU did "not grant[] or otherwise expressly act[] upon" the reconsideration motion, it was deemed denied pursuant to N.J.A.C. 14:1-8.7(c).

II.

N.J.S.A. 48:2-46 vests the Appellate Division with jurisdiction to review BPU orders. Because "the BPU's power to regulate utilities is broad," In re Centex Homes, LLC, 411 N.J. Super. 244, 254 (App. Div. 2009), its "rulings are entitled to presumptive validity." In re N.J. Am. Water Co., 169 N.J. 181, 188 (2001) (quoting In re Petition of Jersey Cent. Power & Light Co., 85 N.J. 520, 527 (1981)). We will not disturb a BPU determination unless it was "arbitrary, capricious, unreasonable, or beyond the agency's delegated powers." N.J. Am. Water Co., 169 N.J. at 188 (quoting In re Amend. of N.J.A.C. 8:31B-3.31, 119 N.J. 531, 544 (1990)).

A-0424-24

Our review of a BPU decision, as with all administrative agency determinations, is deferential and limited.  Bd. of Educ. of Sparta v. M.N., 258 N.J. 333, 342 (2024).  We focus on:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;
>
> (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and
>
> (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Allstars Auto Grp. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

Although we are not bound by an agency's statutory interpretation, "[w]e will ordinarily defer to an agency's reasonable construction of statutes it is charged with implementing."  Platkin ex rel. Kopleton v. Kizito, 481 N.J. Super. 587, 594 (App. Div. 2025) (quoting In re the Competitive Solar Incentive Program, 478 N.J. Super. 341, 349 (App. Div. 2024)).  The challenger of an administrative action bears the burden of demonstrating that it was arbitrary, capricious, or unreasonable.  A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 339 (App. Div. 2009).

6

We are bound to apply clearly defined statutory terms. State v. S.B., 230 N.J. 62, 68 (2017). "It is a cardinal rule of statutory construction that full effect should be given . . . to every word of a statute. We cannot assume that the Legislature used meaningless language." McCann v. Clerk of City of Jersey City, 167 N.J. 311, 321 (2001) (quoting Gabin v. Skyline Cabana Club, 54 N.J. 550, 555 (1969)). "Because we do not assume that the Legislature used any unnecessary or meaningless language . . . we read a statute in its entirety and construe 'each part or section . . . in connection with every other part or section to provide a harmonious whole.'" Patel v. N.J. Motor Vehicle Comm'n, 200 N.J. 413, 418-19 (2009) (quoting Bedford v. Riello, 195 N.J. 210, 224 (2008)).

III.

The central issue on appeal invokes principles of statutory construction—requiring us to determine whether the BPU's denial of CEP's subsection (t) application was arbitrary, capricious or unreasonable because, as CEP argues, the BPU erred in applying subsection (s) to the Kober Site as farmland. Unconvinced CEP has demonstrated the BPU acted arbitrarily, capriciously, or unreasonably in denying the application, we affirm.

A-0424-24

To provide context, we briefly reference the governing statutory and regulatory framework. The Clean Energy Act (CEA), P.L. 2018 c. 17, was enacted on May 23, 2018, as an amendment to the Solar Act. The CEA charged the BPU with closing the Solar Renewable Energy Certificate Registration Program (SRP), which was the solar incentive program in place at that time; launching an interim incentive program; and transitioning to the Successor Solar Incentive (SuSI) program. See N.J.S.A. 48:3-87(d)(3).

On December 6, 2019, the BPU launched the TI program, which was "designed to provide a bridge between the [SRP] and . . . [the SuSI program] under development." N.J.A.C. 14:8-10.1. Under the TI program, the BPU permitted developers to submit a complete registration package prior to the opening of the SuSI program to receive fixed solar energy incentives. N.J.A.C. 14:8-10.4(f).

Subsections (s) and (t) impose different criteria to distinct types of property for which solar developers seek TRECs. Solar developers can apply under subsection (t) to be deemed a grid-supply solar project and to receive TRECs for "solar electric power generation facilit[ies] . . . on a brownfield, on an area of historic fill[,] or on a properly closed sanitary landfill facility."

A-0424-24

N.J.S.A. 48:3-87(t)(1). However, under subsection (s), "land that has been actively devoted to agricultural or horticultural use that is valued, assessed, and taxed pursuant to the [FAA, N.J.S.A. 54:4-23.1 to -23.23,] at any time within the [ten]-year period prior to the effective date of [the Solar Act]" must meet additional requirements to be deemed "connected to the distribution system" and eligible for TRECs. N.J.S.A. 48:3-87(s); see also N.J.A.C. 14:8-1.2 (defining "connected to the distribution system").

The applicability of subsection (s) is predicated on a determination that property was farmland, as defined by the FAA, during the Farmland Lookback. The FAA defines farmland as real property devoted to statutorily defined plant and animal production, N.J.S.A. 54:4-23.3, and that meets specified financial requirements tied to agricultural or horticultural product sales, N.J.S.A. 54:4-23.5.

B.

Guided by well-established principles of statutory construction and our decision in In re Implementation of L. 2012, c. 24 (Millenium), 443 N.J. Super. 73 (App. Div. 2015), we address whether the BPU erred in interpreting N.J.S.A. 48:3-87 to conclude subsection (s) applied and, therefore, CEP's subsection (t) application had to be denied. CEP posits the site is currently a brownfield,

which makes it eligible for TRECs under subsection (t), regardless of whether the Kober Site was deemed farmland under subsection (s) during the Farmland Lookback.

We considered the applicability of subsections (s) and (t) in Millenium. We affirmed the BPU's denial of a subsection (t) application in part because the property at issue was farmland under subsection (s). Millenium, 443 N.J. Super. at 78-79. There, the applicant sought financial incentives for a proposed solar power project under subsection (t) by claiming that qualified farmland was a brownfield due to soil contamination. Id. at 76. We concluded Millenium's application could not be considered under subsection (t) and, instead, was subject to subsection (s) because it concerned a proposed solar project on property subject to the Farmland Lookback. Id. at 79. We determined:

> By its unambiguous terms, the Solar Act requires farmland-based applications to be submitted under subsection (s), unless they are "net metered or an on-site generation facility," N.J.S.A. 48:3-87(s), exceptions which Millenium does not claim apply here. Projects to which subsection (s) applies must satisfy a more stringent set of criteria than applications which are subject to subsection (t).
>
> [Id. at 78-79.]

In affirming, we concluded the BPU's decision was consistent with both the statutory language and legislative intent of the Solar Act and state energy

10

policies, which were designed to encourage solar projects on contaminated or underutilized non-farmland sites, while "specifically discourag[ing] the use of agricultural land for solar projects." Id. at 79.

Our holding in Millenium is controlling and directly on point. Here, there was ample evidence before the BPU that established the Kober Site was actively used for agriculture during the Farmland Lookback as defined in subsection (s). CEP does not dispute this factual determination. We are unpersuaded by CEP's attempt to distinguish Millenium by asserting the Kober Site currently qualifies as a brownfield under subsection (t) and, in Millenium, no such proofs were adduced. Our determination in Millenium that the BPU properly considered subsection (s) in denying the subsection (t) application was independent of our secondary determination that the record did not contain evidence the property was a brownfield under subsection (t). See id. at 78-80.

CEP does not cite to any statutory language or decisional law to support its argument that the Solar Act contains an inherent conflict because subsection (s) evaluates property use retroactively and subsection (t) does not. CEP posits the Legislature did not intend for property presently identifiable as a brownfield to be ineligible under subsection (t) only because it was farmland as defined in

11

subsection (s). The plain statutory language and principles of statutory construction do not support CEP's argument.

CEP requests that we ignore the unambiguous statutory language of subsection (s) and permit its application to proceed under subsection (t). However, subsection (s) and subsection (t) projects are subject to different criteria. See id. at 79 ("[p]rojects to which subsection (s) applies must satisfy a more stringent set of criteria" to be deemed connected to the distribution system, while "subsection (t) makes it relatively easy."). To permit CEP to elect to proceed under subsection (t), thereby avoiding the additional conditions under subsection (s), would frustrate the purpose of the latter and render statutory language superfluous. Because we are bound to give effect to unambiguous statutory language and to construe statutory provisions harmoniously, we conclude CEP must meet the requirements applicable to farmland under subsection (s), even though the Kober Site might otherwise meet the criteria of a brownfield under subsection (t) at the time of the application.

CEP's questioning of the propriety of condemning a property to inutility because of its farmland assessment status more than a decade ago is an issue for the Legislature, not for this court. Our role is limited to review of the BPU's decision under the statute as written.

12

We are unconvinced that the BPU's application of the subsection (s) requirements to its evaluation of CEP's subsection (t) application constitutes improper rulemaking. Subsection (s) applies to CEP's application by virtue of the statute itself, rather than through improper rulemaking.

C.

We are also unpersuaded that reversal is warranted simply because of the BPU's alleged delay in denying CEP's application and its failure to decide the reconsideration motion. CEP has not cited to any supporting statutory or regulatory law and has not demonstrated reversal is merited under its "turn square corners" argument. F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 426-27 (1985) (quoting Gruber v. Mayor & Twp. Comm. of Raritan Twp., 73 N.J. Super. 120, 127 (App. Div. 1962)).

We reject CEP's argument that the BPU arbitrarily departed from its reasoning in a prior decision. That decision is unpublished, see R. 1:36-3, factually distinguishable and no longer relevant since CEP does not dispute the Kober Site was farmland as defined in subsection (s).

To the extent we have not otherwise addressed CEP's arguments, it is because they do not merit discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0424-24